Moss, Judge,
delivered the opinion of the court:
Since 1910 plaintiff, Charles L. Huisking, has been continuously engaged in business as a drug broker. For a number of years prior to 1917, in addition to the brokerage business, plaintiff from time to time made incidental purchases and sales of drugs, chemicals, and allied articles as a merchant. After the beginning of the World War, plaintiff, realizing that the sources of available supply were insufficienf to meet the world demand, began to give particular attention to methods of acquiring such articles as a merchant, by purchasing same outright. This branch of plaintiff’s business grew rapidly during the war period, reaching its peak in 1917 when his net income from this source for the first ten months of that year amounted to $128,689.80, with an invested capital for the same period of approximately $800,000. During the same period plaintiff’s net income from the brokerage business amounted to $69,511.74, with no invested capital except the necessary expense of maintaining an office with a force ranging from five to twenty employees. On November 1, 1917, plaintiff incorporated under the name “ Charles L. Huisking, Inc.,” and thereafter continued both the brokerage business and the merchandizing business.
In his income and excess-profits tax return for the period from January 1, 1917, to October 31, 1917, plaintiff stated a taxable income derived from his commissions as a broker amounting to $69,511.74, and also a taxable income derived from the business of buying and selling drugs on his own account in the sum of $128,689.80.
The question here involved is controlled primarily by sections 201 and 209 of the revenue act of 1917, 40 Stat. 303-307.
The applicable portion of section 201 provides:
“That in addition to the taxes under existing law and under this act there shall be levied, assessed, collected, and paid for each taxable year upon the income of every corpo *264 ration, partnership, or individual a tax (hereinafter in this title referred to as the tax) equal to the following percentages of net income.”
Here follows the schedule of percentages. Section 209 provides:
“ That in the case of a trade or business having no invested capital or not more than a nominal capital there shall be levied, assessed, collected, and paid, in addition to the taxes under existing law and under this act, in lieu of the tax imposed by section two hundred and one, a tax equivalent to eight per centum of the net income of such trade or business in excess of the following deductions: In the case of a domestic corporation $3,000, and in the case of a domestic partnership or a citizen or resident of the United States $6,000; in the case of all other trades or business, no deduction.”
Article 39 of Regulations 41, promulgated by the Commissioner of Internal Revenue with the approval of the Secretary of the Treasury, so far as applicable to this proceeding, reads as follows:
“An individual carrying on a trade or business having an invested capital may, in computing th’e net income of the trade or business, for purposes of the excess-profits tax, deduct a reasonable amount designated by him as salary or compensation for personal service actually rendered by him in the conduct of such trade or business. In no case shall the amount so designated be in excess of the salaries or compensation customarily paid for similar service under like responsibilities by corporations or partnerships engaged in like or similar trades or business.”
In his return for 1917 plaintiff computed his excess-profits tax on the taxable income derived from the business of buying and selling drugs, by applying the graduated rates under section 201 above quoted according to the following process: He deducted from the net income of $128,689.80 the sum of $50,000, which he claimed as compensation for his personal services in connection therewith, and arrived at the tax due by applying to the remainder, $90,478.93, the appropriate percentage under section 201. He also reported in his return for excess-profits tax purposes as income taxable at 8 per cent under the provisions of section 209 of said act the sum of $69,511.74 derived from the brokerage business, to *265 gether with the $50,000 which had been deducted from the $128,689.80 earned from the merchandizing business. There was a further sum, not important in the consideration of this case, which was returned by plaintiff. Plaintiff’s total tax as thus computed amounted to $72,531.50, which was duly paid. Thereafter the Commissioner of Internal Revenue assessed against plaintiff for the same period an additional tax of $17,770.88, which was paid under protest. Plaintiff filed a claim for the refund of said sum and same was rejected. This suit is for the recovery of said additional tax.
The Commissioner of Internal Revenue determined plaintiff’s tax liability by adding to the $90,478.73, which was the income from the merchandizing business, less $50,000 deducted by plaintiff as compensation for personal services, the amount of $69,511.74 earned by plaintiff as brokerage commissions. To this was added the sum of $674.77, being an item erroneously omitted by plaintiff in his original return, making a total of $160,665.44. In addition to the $50,000 claimed and deducted by plaintiff in his tax return as compensation for personal sendees in connection with the merchandizing business, the commissioner allowed the further sum of $20,000. The total of these two sums, $70,000, was then deducted from the total income, and the amount of tax due was determined by applying to the remainder the appropriate graduated rate under section 201. By this process it will be seen that plaintiff’s income from the brokerage business, taxable at a flat rate of 8 per cent, is subjected to taxation measured by capital employed, not in the brokerage business, but in the collateral business of buying and selling. It results in this case in imposing an excess-profits tax of 60 per cent upon the greater portion of plaintiff’s income as a broker, whereas the statute provides that such income should be taxed at 8 per cent.
The tax imposed by section 201 was a tax on capital. The rates were graduated to meet the varying conditions as to amount of invested capital, ranging from 20 per cent to 60 per cent of the amount of the net income. The tax imposed by section 209 was a tax on income produced solely, or almost-solety, from personal services, and an arbitrary rate was fixed *266 as representing what Congress regarded as a fair measure for computing such tax. If the method adopted by the commissioner in the present case is sound in principle, the inevitable result would be the occasional imposition of the higher-rates under the graduated scale of percentages on both classes of income, regardless of their relative importance. For example, a taxpayer in plaintiff’s situation might produce an income, negligible in amount, from the business of a merchant and an abnormally large income from the brokerage business, and yet he would be required to pay the tax on the aggregate income from both sources at the disproportionately high rates. While plaintiff’s income for 1911 derived from the trading business exceeded the income from the brokerage business, it was the result of accidental business conditions due to the exigencies of the war. Plaintiff’s chief business throughout his entire career was that of broker. His activities in buying and selling, at first incidental and unimportant in volume, were a later development, which grew in importance after the outbreak of the World War, reaching its high point in 1917, and thereafter declined. The wide variance between the two classes of tax, one of which imposed a tax of 8 per cent and the other, as in this case, of 60 per cent, would seem to refute the idea that Congress could have intended that the latter percentages should, under any circumstances, be applied in determining the amount of tax in the former class, provided,.of course, the two incomes were susceptible of definite separation. In this case that question presents no difficulties. The brokerage business and the merchandizing business were maintained separately on plaintiff’s books, which clearly differentiated the two incomes.
The Government’s theory does not seem to be in accord with the spirit and purpose of Congress as expressed in the statutes under consideration.
Defendant cited the case of J. H. Lane & Company v. United States, 62 C. Cls. 721, as decisive of this case. The statute applicable to the question involved in the Lome case was section 303 of the revenue act of 1918, by which Congress specifically provided relief from high rates of the excess-profits tax to that portion of the income of a corporation which, if constituting the sole trade or business, would *267 bring it wdthin ths class of personal-service corporations in which capital must not be a material income-producing factor. The relief sought in the Lane case was denied in an opinion by Judge Booth. The facts in the two cases differ materially. It is stated in the opinion, “ The plaintiff’s system of accounting, reflected in bookkeeping, disclosed the income received from its various sources but did not disclose an allocation of invested capital to any one or more of its alleged branches,” and further, “ In keeping its books it never occurred to plaintiff that its business embraced five distinct and separate branches, for its accounts were not so kept, and it required the services of an expert to make an allocation of income thereto.” The evidence in the instant case shows quite the reverse of this situation. There was no invested capital in plaintiff’s brokerage business, except the mere expense of maintaining an office and a force of clerks and other employees ranging in number from five to twenty persons. Furthermore, plaintiff’s books were kept in such a manner as to determine with unerring accuracy the separate incomes from the two branches of plaintiff’s business. The reasoning of the court in the opinion in the Lane ease tends to sustain the theory of plaintiff in this case.
The court is of the opinion that the method employed by plaintiff in computing his tax liability for the period in question was correct and that he is entitled to recover. It is so ordered.
Gbaham, Judge; Booth, Judge; and Camebell, Chief Justice, concur.